UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  4:19-CR-555 ERW/PLC |
| | ) |
| ORVILLE GOINS, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion to Suppress Evidence and Statements [ECF No. 26].  Defendant claims in his post-hearing brief [ECF No. 56] that the Court must suppress his statements because:  (1) officers did not administer the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966) before he made his alleged statements during the traffic stop[1] and (2) "there are no notes or other authentication of the statements" he allegedly provided to Detective Anderson after Miranda warnings.  With respect to suppression of the evidence (a gun seized during a warrantless search of his vehicle), Defendant contends in his post-hearing brief that the police officer lacked probable cause to believe the vehicle contained evidence of criminal activity under United States v. Daniel, 809 F.3d 447, 448-49 (8th Cir. 2016) (citing United States

---

[1] In his motion to suppress statements [ECF No. 26], Defendant argued any statement he made was (1) "elicited by coercion" and involuntary, and (2) was "the result of an illegal arrest and . . . , therefore, inadmissible." The Court need not address those arguments because Defendant did not pursue those arguments in his post-hearing brief [ECF No. 56].

Defendant also presented in his motion to suppress statements an argument that discovery disclosed Defendant made "purported statements" and "it must be ascertained whether he was provided his Miranda rights." With respect to the Miranda issue, Defendant argued in his motion to suppress only that "[t]he first inquiry to be ascertained is the nature and extent [and timing] of the Miranda warning provided by the officer" and then, if Defendant made any statement, "whether [Defendant] invoked a request for counsel prior to any statements allegedly attributable to him." Defendant does not pursue in his post-hearing brief [ECF No. 56] any argument that Defendant "invoked a request for counsel prior to any statements allegedly attributable to him" and the record does not disclose that Defendant invoked his right to counsel during his interactions with police officers, so the Court need not further address that argument.

v. Ross, 456 U.S. 798, 823-24 (1982)).[2]

With respect to the motion to suppress statements, the Government argues (1) any statement by Defendant during the traffic stop on July 5, 2019, occurred after Defendant received Miranda warnings or did not result from police questioning;[3] and (2) Defendant voluntarily made statements to Detective Anderson on July 5, 2019, only after issuance of Miranda warnings. With respect to the motion to suppress evidence, the Government urges the warrantless search of the vehicle was authorized by either the inventory search exception or the automobile exception to the search warrant requirement.

The Court held a hearing at which the Government presented the testimony of five officers with the City of St. Louis Metropolitan Police Department ("SLMPD"), and introduced, without objection, seven exhibits, including a copy of the SLMPD's Towing Procedures (Gov't Ex. 4). One of the exhibits, Ex. 7, was a dvd recording of three videos from two officers' vehicles' "dashcams" during the traffic stop on July 5, 2019. Both sides filed post-hearing briefs after a transcript of the hearing was filed.

**Factual Background**

Ryan Barone, a sergeant with the SLMPD, testified that on July 4, 2019, he was assigned to the "detail" patrolling Fair St. Louis. Sergeant Barone (who was at the time a detective with the SLMPD's Child Abuse Unit) was struck by the "driver side quarter panel" of a white SUV while

---

[2] In his motion to suppress evidence [ECF No. 26], Defendant asserted that law enforcement had no basis to conduct a warrantless search of his vehicle, while specifically acknowledging (and questioning the continued viability of) an inventory search exception to the Fourth Amendment's warrant requirement when an "[i]nventory search[ is] conducted according to 'standardized police procedures.'" However, Defendant did not address the inventory search argument in his post-hearing brief and the Court considers it abandoned. In addition, in his post-hearing brief, Defendant conceded that the police officers conducted a lawful traffic stop.

[3] In its response to Defendant's motion to suppress statements [ECF No. 39], the Government had argued Defendant "was issued the Miranda warnings before each statement, and he knowingly, intelligently, and voluntarily waived his rights before giving each statement."

2

walking in a crosswalk south across Washington Avenue. Because the driver's side window was down, Sergeant Barone was able to view the driver. The SUV did not stop. Sergeant Barone reported the incident to a SLMPD supervisor who was near the scene.

A downtown St. Louis Realtime Crime Center camera recorded a picture of the SUV along with its license plate number. The captured information was entered into the REJIS system and designated as a "wanted" vehicle.

On July 5, 2019, Sergeant Barone viewed a photographic lineup. Sergeant Barone identified Defendant in the lineup as the driver of the SUV. Sergeant Barone was also shown a photograph of the vehicle that allegedly struck him and identified the vehicle.

On July 5, 2019, SLMPD Officer Scott Gruswitz received a radio call from the Realtime Crime Center identifying the make, model and license plate number of the wanted vehicle. Officer Gruswitz was in the area of Union Avenue and Natural Bridge and observed the wanted vehicle travelling northbound on Union. Officer Gruswitz began following the vehicle and, due to its movements through traffic, believed the vehicle was attempting to position itself to "run or flee." When Officer Gruswitz pulled closely behind the vehicle, he observed the driver lift himself up on the right side and then lower back down, then "reach[] toward the center console" and "mov[e] towards the middle of the vehicle." Based on his experience, Officer Gruswitz concluded that the driver's movements indicated an attempt to conceal an item.

After activating his lights and siren, Officer Gruswitz was able to pull over the vehicle and parked his patrol vehicle behind the wanted vehicle, facing the wanted vehicle. Officer Gruswitz's patrol vehicle had a dashcam.

Officer Gruswitz approached the driver's side of the wanted vehicle and noticed that the driver "appeared really nervous, was avoiding eye contact, kind of a low voice." Officer Gruswitz

also believed the driver was breathing "a little . . . heavier than normal."

Officer Gruswitz asked the driver to exit the vehicle and placed the driver in handcuffs. Two other officers "conveyed" the driver to the back of the vehicle. Officer Gruswitz remained standing at the vehicle's open driver's door and attempted to contact the detective bureau that had placed the "wanted" to obtain instructions about disposition of the vehicle.

Shortly thereafter, Officer Hitchcock arrived to take possession of the vehicle and tow it. As part of the towing procedure, Officer Hitchcock took an inventory of the vehicle's property. During the search, Officer Hitchcock recovered a firearm from the vehicle.

While the search of the vehicle occurred, an officer conducted a records check of the driver who was identified as Defendant. The records check revealed that Defendant was a convicted felon.

After Officer Hitchcock recovered the firearm, he walked to the back of the wanted vehicle where he administered <u>Miranda</u> warnings to Defendant. Sergeant Gruswitz recalled Defendant stating in reaction to seeing the recovered firearm "what's that" or "how did that get there?" Officer Gruswitz then asked Defendant if he carried a firearm and Defendant responded, "No, someone must have left it in my car."

Defendant was transported to a police station. At the station, Officer Hitchcock and Officer Gruswitz again administered <u>Miranda</u> warnings to Defendant. Defendant declined to make any statement or to participate in a recorded interview, no questioning occurred, and Defendant was booked.

On cross-examination of Officer Gruswitz, defense counsel established that Defendant was polite and cooperative in his interactions with Officer Gruswitz.

Officer William Hitchcock testified that on July 5, 2019, he assisted Officer Gruswitz with

a traffic stop of Defendant's vehicle. At the stop, Officer Hitchcock parked his vehicle, which had a dashcam, so that it was in front of and facing Defendant's vehicle.

Officer Gruswitz asked Officer Hitchcock to assist with a search of Defendant's vehicle. Officer Hitchcock stated that Officer Gruswitz advised he should search in the center console area because Defendant was "digging in" that area. From the front passenger side, Officer Hitchcock searched the center console area of Defendant's vehicle and found a firearm. After locating the firearm, Officer Hitchcock advised Defendant of his Miranda rights. Officer Hitchcock testified that Defendant did not make any statement to him and he did not question Defendant during the traffic stop.

Officer Hitchcock conveyed Defendant to the police station. Defendant was placed in an interview room where Officers Hitchcock and Gruswitz read Defendant his Miranda rights a second time. Defendant declined to make a statement.

On cross-examination, defense counsel established that Officer Hitchcock did not hear Defendant "make any utterances."[4]

Officer Joseph Ross testified, that on July 5, 2019, he assisted Officers Gruswitz and Hitchcock in a vehicle stop. Officer Ross observed Officer Gruswitz pull over Defendant's vehicle on Union. After Defendant exited his vehicle, Officer Gruswitz placed Defendant in handcuffs and had Defendant step to the rear of Defendant's vehicle with Officer Ross. Thereafter, because Defendant's vehicle was "wanted" and Defendant was arrested, Officer Ross arranged for towing of the vehicle pursuant to the SLMPD's towing procedures.

Detective John Anderson, a thirty-year employee of the SLMPD, testified that he interviewed Defendant on July 5, 2019, after Defendant was transported to the St. Louis Justice

---

[4] Officer Hitchcock testified on re-direct examination that, during the drive to the police station, Defendant "asked if he could make a phone call and if they had a cell phone."

Center. The interview, which focused on the July 4, 2019, incident in which the vehicle struck Sergeant Barone, lasted approximately five minutes.

In the interview room, Detective Anderson first administered <u>Miranda</u> warnings to Defendant. Defendant acknowledged understanding his rights. Defendant stated to Detective Anderson that he was downtown and driving a Lincoln MKZ but did not remember striking an officer. Detective Anderson informed Defendant that the incident was captured on a Realtime Crime Center camera. Defendant responded to the information by dropping his head and stating that he "had just gotten out of prison, he just did nine years for an armed robbery. He didn't want to go back."

Detective Anderson testified that he asked Defendant if his statement about prison related to "having or possessing a firearm at the time of the accident" as the reason Defendant "drove off" after the accident. Defendant responded stating, "Man, I ain't supposed to have no guns." Following this statement, Detective Anderson asked Defendant if he wished to make a written or recorded statement. Defendant declined, and the interview ended.

On cross-examination, Defendant's attorney established that Detective Anderson did not write down Defendant's statements. On re-direct examination, the Government clarified that Detective Anderson's report, which he wrote on July 5, 2019, had the Defendant's last statement in quotation marks.

## **Discussion**

A. <u>Defendant's statements during the traffic stop and to Detective Anderson</u>

Defendant contends that his statements to Officer Gruswitz during the traffic stop, if any, were not made until after he was arrested and before he received <u>Miranda</u> warnings and Officer Hitchcock, who administered his <u>Miranda</u> rights after the discovery of the gun, did not hear

Defendant make any "utterances."  With respect to Defendant's statement to Detective Anderson at the Justice Center, Defendant contends, in essence, that because Detective Anderson did not memorialize his interview in writing and relies on his memory, the Court must suppress Defendant's statement.

The Government contends that Defendant's initial statement was spontaneous and not prompted by police questioning.  With respect to the statement to Detective Anderson, the Government argues that Defendant made the statement voluntarily following administration of Miranda warnings.

In Miranda, the Supreme Court held that the prosecution may not use a defendant's statements "stemming from custodial interrogation" by law enforcement unless the defendant was first informed of his right to be free from self-incrimination.  Miranda, 384 U.S. at 444.  However, a defendant's "[v]olunteered statements of any kind are not barred by the Fifth Amendment…." Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989) (quoting Miranda, 384 U.S. at 478).  More specifically, the Eighth Circuit held that "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or [made] during a conversation not initiated by the officers."  Id. (internal quotation marks and citation omitted); accord United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996).

Even if Defendant's statements regarding the gun located in his vehicle were not made following Miranda warnings, they constitute a spontaneous utterance not induced by the investigating officers and made during a conversation not initiated by the officers.  Id.  See also United States v. Walker, No. S1-4:18CR825 AGF(JMB), 2020 WL 3146570, at *8 (E.D. Mo. Jan. 22, 2020) ("voluntary statements by a suspect which are not in response to questioning are not subject to Miranda," citing Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)), report and

7

recommendation to deny the defendant's motion to suppress statements made "voluntary[ily] and spontaneous[ly]" before Miranda warnings were completed adopted by United States District Judge Audrey G. Fleissig, Order at p. 4, filed Mar. 3, 2020 [ECF No. 96] in S1-4:18CR825 AGF); United States v. Gilow, No. 12-185 (ADM/FLN), 2012 WL 4794134, at *1 (D. Minn. Sept. 24, 2012), report and recommendation to deny the defendant's motion to suppress statement regarding a gun characterized as a "spontaneous utterance" adopted by United States District Judge Ann D. Montgomery, at 2012 WL 4796549 (Oct. 9, 2012).  Here, it was the officer's discovery of a gun in Defendant's vehicle, and not custodial interrogation, that resulted in Defendant's spontaneous statements regarding the gun.

With respect to the Defendant's statements to Detective Anderson at the Justice Center, the undisputed record establishes that Defendant voluntarily spoke with Detective Anderson following administration of Miranda warnings.  Defendant cites no support for the proposition that a failure to memorialize an interaction with notes is sufficient to warrant suppression of statements.  Accordingly, Defendant's motion with respect to his statements is denied.

B. Warrantless search of Defendant's vehicle

Defendant contends that the search of his vehicle was improper because police officers had no probable cause to believe his vehicle contained evidence of criminal activity.  Defendant admits that "Officer Gruswitz made a lawful traffic stop" but disputes the officer's testimony regarding Defendant's "movements" while inside the vehicle.

While the Fourth Amendment forbids unreasonable searches and seizures, "[i]t is well settled that a warrantless search of an automobile is not unreasonable if law enforcement officers have probable cause to believe that the vehicle contains evidence of criminal activity." Daniel, 809 F.3d at 448-49 (citing Ross, 456 U.S. at 823-24).  "Probable cause exists when the facts

8

available to an officer would warrant a person of reasonable caution to believe that contraband or other evidence of a crime is present." Id. at 449 (citing Florida v. Harris, 568 U.S. 237, 244 (2013)).

With respect to the dispute regarding Defendant's movements, the record contains no evidence controverting Officer Gruswitz' testimony of his observation of Defendant's actions before and at the time Officer Gruswitz stopped Defendant's vehicle. Based on Defendant's behavior after his vehicle was stopped, including his nervousness and lack of eye contact, as well as his observed movements while in his vehicle, Officer Gruswitz had probable cause to believe the vehicle contained evidence of criminal activity. See United States v. Lyles, 946 F.2d 78, 80 (8th Cir. 1991).

Additionally, the Court agrees with the Government's position that the warrantless search of Defendant's vehicle falls within the "inventory search" exception to the warrant requirement. "The inventory search exception to the Fourth Amendment's warrant requirement permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search." United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011). Inventory searches that are conducted according to standardized police procedures are reasonable and constitutional. Id. (citing United States v. Hall, 497 F.3d 846, 851 (8th Cir. 2007)). The uncontroverted evidence establishes that the warrantless search of Defendant's vehicle, which was subject to towing, was "conducted according to standardized police procedures" regarding the towing of vehicles. Defendant has not contended that the towing of his vehicle was improper in any respect. Accordingly, Defendant's motion with respect to the warrantless search of his vehicle resulting in the seizure of the gun is denied.

After careful consideration,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [ECF No. 26] be **DENIED**.

The parties are advised that they have **fourteen (14)** days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in the waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

This matter will be set for trial at a later date before the Honorable E. Richard Webber, United States District Judge.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of June, 2020